JOSEPH CHASE *vs.* GOING HATHORN and others.

*Deposition—notice to adverse party. Surety on note—liabilities of, when principal's name is forged.*

A notice to take the deposition of one of several defendants is sufficient if served only upon the deponent as an adverse party.

It affords a surety no defense that the names of two of the principals upon a note are forged, the fact being unknown to the surety and holder when delivered.

If a principal sells a note to a third person, not the payee, without the express or implied consent of the surety, the surety is not liable thereon; but such consent may be implied by the course of business between the parties.

A note payable to a savings bank purchased of the makers by a party, not the payees, the bank having no interest in it, may be indorsed without recourse by the bank to such purchaser, to enable him to maintain a suit in his own name thereon; and the authority of the treasurer to indorse it for the bank may be inferred from the conduct of the trustees without any express direction or vote.

ON REPORT.

ASSUMPSIT upon the following note :

PITTSFIELD, December 29, 1869.

Four months after date we promise to pay to the order of the Treasurer of the Newport Savings Bank, three hundred dollars at the Newport Savings Bank, value received.

DANIEL W. SIMONS,
HENRY M. SIMONS.
GOING HATHORN, *Surety.*

On the back of the note was indorsed,

" Waiving demand and notice,

JOHN E. SIMONS.

Not holden,

A. HOBART, Treasurer of Newport Savings Bank."

John E. Simons, one of the defendants, was defaulted. The plaintiffs discontinued as to Daniel W. Simons and Henry M. Simons without costs, upon the ground that their names were

VOL. LXI. 33

forged to the note by John E. Simons. Going Hathorn, the surety upon the note, defended. Writ dated Sept. 19, 1870.

The plaintiff offered the deposition of John E. Simons, which was objected to because the defendant Hathorn was not notified of its taking and was not present, Hathorn claiming that there was fraud and collusion between the plaintiff and John E. Simons, and that notice to Simons would not authorize the deposition to be used to affect the rights of Hathorn without notice to him. The objection was overruled and the deposition admitted.

John E. Simons testified in this deposition, among other things, that the actual signers to this note were himself and Hathorn; that the names of Daniel W. and Henry M. Simons were placed upon the note by himself without any authority; that the note was given to raise money to pay on notes upon which Mr. Hathorn and himself were holden, and that the money obtained upon the note in suit was so used; that it was the talk between himself and Hathorn that the money should be obtained of Mr. Chase or a Mr. Nichols if he could not get it from the bank, and that the note was in the same condition at the time Hathorn signed it as it was at the time of the taking of this deposition. The plaintiff testified, against objection, that when Simons brought the note he (S.) told him (C.) "that Hobart said the bank could not discount the note and sent him to me" (plaintiff).

A. Hobart, called by the defence, testified that he was treasurer and general agent in managing the affairs of the Newport Savings Bank; that the note in suit was offered at the bank by John E. Simons to be discounted at about the time of its date, and they refused because they had no funds; that the next he saw of the note was sometime after its maturity, when the plaintiff presented it to him and asked him to endorse it; witness told him he wished to consult the trustees and did consult one of them, who gave his consent, whereupon he indorsed it as it now appears, and that no consideration was paid for the indorsement and the note was never the property of the bank or of the witness.

The defendant, Hathorn, testified that this was an accommoda-

tion note ; that nothing was said about using the money to pay upon notes for which he was holden, nor about getting the money anywhere but of the Newport Savings Bank and that witness never consented nor assented to Simons' getting the money elsewhere ; that he supposed when he signed the note that the signatures of both Henry M. and Daniel W. Simons were genuine, otherwise he would not have signed; that Henry M. Simons had previously agreed to pay all paper witness signed for John, or at John's request, and to protect him in so signing.

The plaintiff testified among other things that he discounted this note for John E. Simons at twelve per cent, and that after the note became due Hathorn promised to pay it. Hathorn being recalled denied the making of any promise to pay the note. He offered letters written by Chase and John E. Simons to prove a conspiracy between them to throw the debt upon him ; that of Chase was admitted and that of Simons excluded.

The case was withdrawn from the jury and reported to the full court, who were authorized to draw such inferences as a jury might from so much of the testimony as was admissible and enter such judgment as should be deemed to be in accordance with the legal rights of the parties.

*A. M. Robinson* and *E. Walker*, for plaintiff.

*D. D. Stewart*, for the defendant, Going Hathorn, contended:

1. That on account of the forgeries upon the note the defendant was not liable, and cited, as tending to establish a principle opposed to that laid down in *York Co. M. F. Insurance Co.* v. *Brooks*, 51 Maine, 506, the following cases : *Miller* v. *Stewart*, 9 Wheat. 703 ; *Getty* v. *Borisse*, 49 N. Y. 385 ; *Smith* v. *United States*, 2 Wall. 234 ; *Pratt* v. *Gibbs*, 9 Cush. 86 ; *Bean* v. *Parker*, 17 Mass. 591 ; *Wood* v. *Washburn*, 2 Pick. 24 ; *Ferry* v. *Burchard*, 21 Conn. 603 ; *Leaf* v. *Gibbs*, 4 C. & P. 466 [19 Eng. C. L. 475] ; *Awde* v. *Dixon*, 6 Exch. 869 ; *Mason* v. *Bradley*, 11 Mees. & Wels. 589 ; *Wood* v. *Steele*, 6 Wall. 82 ; *Howe* v. *Peabody*, 2 Gray, 556 ; *Martin* v. *Thomas*, 24 Howard, 315 ; *Gardner* v. *Walsh*, 32 Eng.

L. & Eq. 162; *Seeley* v. *The People*, 27 Ill. 173; *Pepper* v. *The State*, 22 Indiana, 399; *Baxter* v. *Duren*, 29 Maine, 434; *Agawam Bank* v. *Sears*, 4 Gray, 98; *Wait* v. *Pomeroy*, 20 Mich. 425; *Little* v. *Derby*, 7 Mich. 325.

2. The signature of John E. Simons upon the back of the note, after the instrument was executed and ready for delivery to the bank, made him an original promissor; this was a material alteration and avoided the note as against Hathorn, without whose knowledge it was done. *Malbon* v. *Southard*, 36 Maine, 147; *Lowell* v. *Gage*, 38 Maine, 35; *Gardner* v. *Walsh*, 32 Eng. L. & Eq. 162; *Lee* v. *Starbird*, 55 Maine, 492; *Chadwick* v. *Eastman*, 53 Maine, 12; *Wallace* v. *Moell*, 21 Ohio St. 163; 2 Parsons' Bills and Notes, 556.

3. The deposition of John E. Simons should be rejected. *Com.* v. *Weiber*, 3 Met. 447; *Chase* v. *Hathaway*, 14 Mass. 224; *School Dist.* v. *Copeland*, 2 Gray, 417; *Scott* v. *Dickerson*, 14 Pick. 276; *Ex parte Davis*, 41 Maine, 59; *Penob. R. R. Co.* v. *Weeks*, 52 Maine, 457; *Walton* v. *Greenwood*, 60 Maine, 364.

4. The bank had no interest in the note, nor had its treasurer, and having acquired no legal title thereto neither could transfer one to the plaintiff. *Lloyd* v. *Howard*, 1 Eng. L. & Eq. 230 and note.

5. The note having been made payable to the Newport Savings Bank, but not having been discounted by the bank, never became a valid and operative contract. *Prescott* v. *Brinsley*, 6 Cush. 233; *Adams Bank* v. *Jones*, 16 Pick. 577; *Allen* v. *Ayers*, 3 Pick. 298; *Skowhegan Bank* v. *Baker*, 36 Maine, 154; *Maine Bank* v. *Cole*, 39 Maine, 188; *Granite Bank* v. *Ellis*, 43 Maine, 367.

6. Having been given without consideration and not negotiated to plaintiff nor accepted by the payees till after maturity, the note was absolutely void on the day of its maturity. *Calder* v. *Billington*, 15 Maine, 398; *Savage* v. *King*, 17 Maine, 301; *Andrews* v. *Pond*, 13 Peters, 65; *Clark* v. *Whitaker*, 50 N. H. 474; *Whistler* v. *Foster*, 14 C. B. (N. S.) 248; *Lancaster Bank* v. *Taylor*, 100 Mass. 18; *Fisher* v. *Leland*, 4 Cush. 468; *Haskell* v. *Mitchell*, 53 Maine, 468.

7. Hathorn's subsequent promise to pay (if any such was made) was not binding unless made with full knowledge of the facts. *Leaf* v. *Gibbs*, 4 C. & P. 466; *Davis* v. *Gowen*, 17 Maine, 390; *Trimble* v. *Thorne*, 16 Johns. 152; *Hunt* v. *Wadleigh*, 26 Maine, 271; *Lee* v. *Howard*, 10 Cush. 162; *Townsend* v. *Wells*, 32 Maine, 416; *Thomas* v. *Mayo*, 56 Maine, 41.

PETERS, J. The deposition of John E. Simons, one of the defendants, taken before action entered, was objected to because no tice of the taking was not given to Going Hathorn, the other defendant, who claimed there was fraud and collusion between the deponent and the plaintiff. No facts are suggested to show what the alleged fraud and collusion was. By R. S., c. 107, § 8, it is provided that where there are several plaintiffs or defendants in an action a notice to one or more of them shall be sufficient. If the defendant Hathorn suspected a sinister purpose in the manner of notice given for taking such deposition, and was dissatisfied with its contents, his remedy would be in taking the testimony anew, and, if necessary, obtaining a continuance for such purpose, but his objection to the admissibility of the deposition cannot be sustained.

The defendant Hathorn claimed to prove a conspiracy, between John E. Simons and the plaintiff, " to throw this debt upon him," and offered written statements of both of them to show it. It does not appear that there was any offer to prove admission of Simons as contradictory to his testimony as a deponent. The evidence offered was properly excluded.

Objection is taken to the admission of the statement of John E. Simons made when he sold the note in suit to the plaintiff. If not admissible as a part of the *res gestæ*, the testimony is utterly immaterial, and its admission not injurious to the defendant.

It is contended by the defendant Hathorn, that he cannot be held upon the note because two signatures on it preceding his, upon the strength of which he was induced to sign as surety, prove to be forgeries. But the question involved in these facts, however viewed elsewhere, has been settled, in this State, adversely to the

defendant, in the case of *York Co. M. F. Ins. Co.* v. *Brooks*, 51 Maine, 506. But it is insisted by the counsel for the defendant that this case should be overruled as not in accordance with an array of authorities contended by him to be inconsistent therewith. There are many questions of a mercantile nature, a decision of which, either way, will result in some degree of hardship as well as of benefit to different parties concerned. Upon such questions different courts are often found to have arrived at different conclusions. But when the principles involved in this description of cases have been once decided by a deliberate adjudication, such decision, unless for reasons of a very controlling character, should be regarded as a finality in the jurisdiction where made, so that all persons interested, knowing the rule of law, can protect themselves accordingly. We are not convinced that the principle established, in the case referred to, is an unjust or erroneous one, but on the contrary, are satisfied that a departure from it would be productive of much more harm than good.

Whether the surety, Hathorn, can be held upon the note, if sold, without his previous consent or subsequent ratification by the principal, John E. Simons, to any person other than the payees, is a point which has been confidently argued on both sides. The reasons upon either side are so forcible it is not strange that different courts hold opposite opinions upon the question. But the precise principle involved here has already been established, as we regard it, in the adjudged cases in this State. The question is touched in *Skowhegan Bank* v. *Baker*, 36 Maine, 154; decided in *Manufacturers Bank* v. *Cole*, 39 Maine, 188; and conclusively settled in *Granite Bank* v. *Ellis*, 43 Maine, 367, that the surety cannot be held. Not upon the ground that there has been a change of contract prejudicial to him, but that there has been no completed contract at all; that there was no delivery to the only party to whom the note by its very terms was to be delivered, and therefore that the contract which was merely undertaken to be made never took effect.

This leads us to determine, whether, as a question of fact, the

surety either expressly or by implication consented to, or ratified the act of the principal in getting the note discounted outside of the Newport Savings Bank. The evidence bearing on this issue extensively conflicts. Still, we think there is a preponderance upon the proposition favorable to the plaintiff. If the testimony of the plaintiff himself is to be regarded as true, no doubt is left about it.

It would be difficult, however, to accord the result of the issue to the plaintiff, with the burden of proof upon him, upon his statements opposed by the denials of the other side. John E. Simons, the defaulted defendant, testifies that the talk between the surety and himself was to get the money of other parties if he could not get it at the bank. Hathorn denies this. Which statement should be relied on? The effect of the testimony of the surety is to clear himself from liability while the liability of Simons is fixed, and he has no legal interest either way. But the defendant invokes against the credibility of Simons that the case shows that he is a confessed forger. It may be questionable, when a cause has been withdrawn from a jury and referred to the court, whether it is not to be regarded as submitted upon the character of the evidence given, rather than upon the character of the persons giving it. His testimony, however, so far as contradicted will not be relied on to help produce the result we arrive at. But Simons deposes to an important fact not contradicted. He says the money got upon the note " was used to pay the interest on notes where Hathorn and I were holden." This is not denied, and it nowhere appears that Hathorn did not know that the money was obtained from the plaintiff and was so used. As this note became substituted for the same amount of liability of the surety upon other notes of a like character, his liability was not in the aggregate increased. It does not appear why the surety should care from what source the money should be obtained. It is urged that it was material because the act of 1869 prohibited discounts by savings banks upon names alone, and, as the money could not be legally obtained but upon some security, that the surety would have been better off on that account. It would seem that the bank rejected the paper only " because they

then had no funds," and not because unaccompanied with security. It does not appear that the parties were aware of the statutory provision, and, if they were, it would be a circumstance to prove that the note was to be thrown upon the market rather than discounted at the bank, for the business and situation of the parties show clearly enough that the very object of the surety's name was because the principal had no security he could use.

The situation of the parties sheds light upon the transaction. When the surety signed the note he relied upon the two names which turn out to be forged ; supposed them genuine or he would not have signed ; relied on Henry Simons to pay all paper he signed for John ; and had intimate business and personal relations with them both. Evidently there was a large quantity of paper upon the market bearing these same names. From such an inspection of the situation of the parties and the course of their business transactions as is afforded us upon the evidence, we feel authorized, under the terms of the report, to find that there was an implied permission of the surety that this note might be discounted wherever the money could best be obtained. When the surety testifies that he never assented that the note might be discounted any where outside of the Newport Bank, his testimony can mean no more. than that he made, in words, no direction or declaration to that effect.

Objection is taken by the defendant against the legality of the transfer of the note to the plaintiff from the bank. If the note is regarded as a note to the treasurer individually, no such question can be raised. Whether a note of this description is a promise to the corporation or its treasurer, usually depends much upon the source from which the consideration for it comes. That criterion cannot exist here, as neither of them purchased or paid for the note. Assuming that the bank, and not its treasurer, was the legal payee of the note the objections urged cannot be sustained. That the form of the indorsement was correct was settled in *Farrar* v. *Gilman*, 19 Maine, 440. That a corporation can use its name for a purpose like this is substantially decided in *Lime Rock Bank* v. *Macomber*,

29 Maine, 564, and *B. O. & M. R. R. Co.* v. *Smith,* 47 Maine, 34, and kindred cases in this State, and precisely adjudged in *Elliott* v. *Abbott,* 12 N. H. 549. That this right or power can as well be exercised by a Savings Bank as any other kind of banking institution, follows from the similarity of the attributes and powers common to both; and that the treasurer had the authority of the bank to make the indorsement, appears sufficiently from the evidence in the case.

This transaction being outside of the ordinary course of business of the bank, the treasurer would not be authorized to indorse the note for the bank without a power specially delegated to him to do so. The assent of the bank, for this purpose, may be inferred from the acts of its officers without any recorded vote or express direction of the board of trustees. *Lime Rock Bank* v. *Macomber, supra; Brown* v. *Donnell,* 49 Maine, 421; *Sherman* v. *Fitch,* 98 Mass. 59; *Lester* v. *Webb,* 1 Allen, 34. In these cases in Massachusetts it is stated that authority in the agent of a corporation may be inferred from the conduct of its officers or from their knowledge and neglect to make objection, as well as in the case of individuals; and considerable stress is placed upon the implied authority conferred upon a treasurer of a corporation, by allowing him to act as their general agent or manager.

A distinction is made between the authority of an agent to bind the corporation by a contract of indorsement, and simply to transfer the property in a note. The latter authority is more readily inferred. *Brown* v. *Donnell, ubi supra.*

Here, by an indorsement "without recourse" no liabilities were assumed; the bank had no more than a nominal interest to pass; the treasurer was "general agent in managing the affairs of the bank," which evidently meant the possession from the trustees of more than the ordinary authority of a treasurer; the attorney who prosecutes this suit is one of the trustees of the bank, and its president is an active practitioner at the bar where this case came up. The action of the treasurer seems to have been unobjected to and acquiesced in long enough to amount to *prima facie* proof of authority for what he has done.

It is not necessary to consider the effect of an alteration of the contract, contended by counsel for the defendant to have been made by the signature of John E. Simons upon the note after its completion, without the consent of Hathorn, as the point does not appear to be presented by the facts of the case.

*Defendants defaulted.*

APPLETON, C. J.; CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.